Mary Cleary *v.* The Pittsburgh, Allegheny & Manchester Traction Company, Appellant.

*Negligence—Street railways—Crossing—Province of court and jury.*

In an action against a street railway company to recover damages for personal injuries the case is for the jury where the evidence tends to show that when the plaintiff, a foot traveler, was about to cross a street and stopped, and a car also stopped just before reaching the crossing, the motorman and the plaintiff each apparently expecting the other to wait, and then both started so nearly together that a collision became unavoidable.

Argued Nov. 5, 1896. Appeal, No. 179, Oct. T., 1896, by defendant, from judgment of C. P., No. 1, Allegheny Co., March T., 1895, No. 450, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries.   Before COLLIER, J.

At the trial it appeared that plaintiff, a woman sixty years of age, was injured by a collision with one of defendant's electric cars on August 20, 1894, at about half past seven in the evening.   The accident occurred in Pittsburg, at the end of the Sixth street bridge across the Allegheny river, between the cities of Pittsburg and Allegheny.   The car which struck the plaintiff stopped, and the plaintiff also stopped before crossing, and then both started so nearly together that a collision was unavoidable.

The court charged in part as follows:

[Now she alleges that when she was coming along the pathway upon which she was lawfully walking and came to the crossing in pursuing her journey down Sixth street, that while she was on the pavement, and before she crossed, she looked to see if there was a car about to go over the crossing, or close enough to reach it before she could cross.   She says she did not see any, and then continued on her way; that she stepped down on the crossing, and when she got on the track or on the roadway, one or the other, she looked again.   This was in the dusk of the evening, but the testimony is that there was plenty of light from the electric lights.   She says she saw no car about to go over the crossing.   Now, you will observe that the car has a right to pass over that crossing before it stops; it has a right to go over it to deliver passengers, and not stop on the crossing.   She alleges that after having looked the second time she was struck, and that she knows no more about it until she came to her senses in the hospital.] [3]   [She then calls the witness Mr. O'Hara, who says he was standing at the corner of the Kennedy building, the old Morgan building, on the corner of Sixth street and Duquesne way.   He says it was about dusk in the evening; that he saw the car twenty or twenty-two feet back of the old lady, coming at a good speed.   He said he wouldn't give an opinion as to the rate at which the car was traveling, but that it was a pretty good speed; that somewhere about the tollhouse he observed the motorman turn his head to hollo, or say something to the motorman on another car which he says was passing in the opposite direction at that time; that when the car got to the corner the motorman turned his head

back again to check up; that he observed this old lady, the plaintiff, just about that time step off the sidewalk onto the street, and you will remember that where the curve comes around there, it is a very short distance from the track to the curb, according to the evidence. He says that she stepped down there, and when she got on the track, she was struck, and that he went with another man to pick her up.] [4]

If the old lady looked and found that the car was not close enough to pass over the crossing before she could reasonably expect to get over; if it was in actual motion and was about to cross and she looked and saw it, then her duty was to stop till it got by, because it had the right to cross; the road had the superior right to cross. Again, under such circumstances, if she did not look (she was not bound to stop; to stand still; you are not bound to stop every time you come to a railroad crossing of this kind in the streets, and if you see a car two squares away, wait till it goes by before crossing), and there was a car approaching and about to cross, it was her own fault.

On the other hand, if she did look, and being an old lady, and it being the dusk of the evening, she did not see the car, and it was coming on at a pretty good rate of speed on this down grade, and if further—which is disputed—you find that the motorman was not paying attention to his business, was not keeping a lookout for this crossing on a down grade, but just before the accident happened, up at the tollhouse, was turning his face in another direction and talking or halloing to somebody else, although he turned back and looked before he actually got to the crossing, or if you find that all of these circumstances, speed and all, constituted negligent conduct on his part, and that the old lady was on the road or on the track at the time he started his car around the curve, she would be entitled to recover, provided you find at the same time that there was no negligence on her part which contributed in any way to the accident. Under such circumstances, seeing her there, it was his duty to let her get across; he would not be allowed to run her down.

On the part of the defendant, the testimony is this: The allegations are twofold, either one of which, if you are satisfied with the testimony, is a perfect defense. The defendant company alleges two facts in defense, which, if true, would

show not only negligence on the part of this poor old lady, but very great carelessness. They allege that she undertook to cross this narrow place while the car was about twenty or twenty-two feet back of her—both of· them coming from Allegheny; that while it was in the dusk of the evening, the electric lights were sufficient to enable any one to see anything there clearly; that the car came along in the usual way, and the motorman, as he came up, checked his car; that the car arrived simultaneously with the old lady opposite the tollhouse, and that it was the duty of the old lady, under such circumstances, to stop and let the car pass. Now, that is the law. If the car got there simultaneously with the old lady, before she started over, she was bound, if she saw it moving, to let it go by, because it had the superior right to pass over the crossing on its own track, as your common sense will tell you. And the defendant offers testimony which tends to show that to be the fact, but that is for you to find by the weight of the testimony. If that is true (and you heard the testimony), it was her duty to stop and wait till the car got over, and then cross.

Then they set up another defense, and it is this : That when the motorman came around there he checked up if he did not stop full before he went over the crossing. They allege that when the motorman came around and saw the old lady standing on the sidewalk, I believe; or, at any rate, they allege that she was not on the track; that he checked up or actually stopped, and that after he stopped, and just as he started to go over the crossing, she started across in front of the car; that he halloed at her, and I believe it was shown that some other person or persons halloed at her, and that thinking all was right, and that she was not on the track, he then started, as he had a right to do, to go over the crossing, and that she started after the car had actually started. If that was true, it was carelessness, and no matter if the old lady is to be pitied, as she certainly is, she could not recover anything in this case. If you find that fact, no matter how we may sympathize with the old lady, we must administer the law faithfully, and the verdict should then be for the defendant.

The court refused binding instructions for defendant. [1, 2]

Verdict and judgment for plaintiff $1,500. Defendant appealed.

*Errors assigned* were (1, 2) refusal to take the case from the jury; (3, 4) above instructions, quoting them.

*A. M. Neeper*, for appellant.—Plaintiff was guilty of contributory negligence : Carson v. Federal Street & Pleasant Valley Ry., 147 Pa. 219 ; R. R. v. Bell, 122 Pa. 58 ; Moore v. R. R., 108 Pa. 349 ; Ehrisman v. Ry. Co., 150 Pa. 180 ; Wheelahan v. Traction Co., 150 Pa. 187 ; Omslaer v. Traction Co., 168 Pa. 519.

*John Marron*, of *Marron & McGirr*, with him *Marshall & Sproul* and *F. C. McGirr*, for appellee.—Defendant was negligent: Woeckner v. Erie Electric Motor Co., 176 Pa. 451.

OPINION BY MR. JUSTICE MITCHELL, January 4, 1897 :

It is charitable to suppose that the plaintiff's recollection was so confused after the accident as to make her testimony worthless, for she testifies that she looked around in the direction of the bridge and there was no car there, whereas the uniform and indisputable testimony of everyone else who saw the accident, including her own witness O'Hara, was that the car which struck her was within fifteen to twenty feet of her at that moment. This would therefore be a clear case of contributory negligence by stepping in front of a moving car, within the rule in Carroll v. R. R. Co., 12 W. N. C. 348, were it not for the fact that appears clearly even in the defendant's evidence, that the car had also stopped. We have therefore the case of a foot passenger about to cross a street, a car stopped just before reaching the crossing, each apparently expecting the other to wait, and then both starting so nearly together that a collision became unavoidable. Under such circumstances only a jury could say where the fault lay.

The recital of the testimony by the judge in his charge did not follow the language of the witnesses exactly, indeed it would have been very difficult to repeat much of it precisely, but we have not been convinced that he made any substantial misstatement of the substance of it.

Judgment affirmed.